UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
ARAYA HENOK,                               )
                                                          )
                        Plaintiff,               )
                                                          )
            v.                                        )          Civil Action No. 14-1114 (PLF)
                                                          )
GLADYS KESSLER, et al.                )
                                                          )
                        Defendants.          )
_____ )

OPINION

            This matter is before the Court on two motions to dismiss filed by the defendants,

the District of Columbia ("the District") and the District of Columbia Commission on Judicial

Disabilities and Tenure ("the Commission"), and on plaintiff Henok Araya's motion to amend

his complaint.[1]  Dr. Araya, proceeding *pro se*, asserts that the defendants failed to maintain

proper oversight of a judge who sits on the Superior Court of the District of Columbia and who

adjudicated Dr. Araya's divorce proceedings in that court.[2]  Dr. Araya contends that the judge

brought the "Catholic Bible" into the courtroom and forced him to swear upon it, and he also

asserts that the judge suffered from a hearing impairment that interfered with the judge's ability

to conduct fair trial proceedings, in addition to various other allegations.

_____

[1]        The District of Columbia Commission on Judicial Disabilities and Tenure is not
named as a defendant, but it has filed a motion to dismiss the plaintiff's complaint on behalf of
seven individual current and former Commissioners who are sued in their official capacities.
Judge Kessler is listed as lead defendant by the plaintiff presumably because she is the current
chairperson of the Commission.  For brevity, the Court refers to these individual defendants
collectively as "the Commission."

[2]        The case caption refers to the plaintiff as "Araya Henok," but the Court is aware
that "Araya" is the plaintiff's surname.  In addition, the Court notes that the plaintiff is a medical
doctor.  Accordingly, the Court refers to him as Dr. Araya.

Dr. Araya seeks damages and injunctive relief, asserting claims under 42 U.S.C. § 1983 and the District of Columbia Human Rights Act, as well as a claim for breach of fiduciary duty.  The District and the Commission respond that Dr. Araya's claims for retrospective relief are untimely and that he fails to state a claim under Section 1983.  The defendants also contend that Dr. Araya lacks standing to assert a claim for injunctive relief.  Upon careful consideration of the parties' arguments, the relevant legal authorities, and the entire record in this case, the Court will grant the defendants' motions and will dismiss this action.[3]

## I.  BACKGROUND

Dr. Araya was a party to divorce proceedings before D.C. Superior Court Judge John H. Bayly, Jr.  A trial was held over several days between July 28, 2010 and January 6, 2011, and on August 24, 2011 Judge Bayly issued a 44-page ruling in the case.  See Araya v. Keleta, 65 A.3d 40, 43-44 (D.C. 2013), cert. denied, 134 S. Ct. 426 (2013).  Judge Bayly granted the petitions for divorce filed by Dr. Araya and his wife; awarded joint legal custody of the parties' children; awarded Dr. Araya's wife sole physical custody of the children; granted Dr.

---

[3]        Relevant papers reviewed by the Court with respect to this matter include:  Dr. Araya's complaint ("Compl.") [Dkt. No. 1]; the District's motion to dismiss ("District MTD") and the memorandum in support thereof ("District MTD Mem.") [Dkt. No. 3]; the Commission's motion to dismiss ("Comm'n MTD") [Dkt. No. 4] and the memorandum in support thereof ("Comm'n MTD Mem.") [Dkt. No. 4-1]; Dr. Araya's opposition to the District's motion to dismiss ("Araya Opp'n District MTD") [Dkt. No. 6]; Dr. Araya's opposition to the Commission's motion to dismiss ("Araya Opp'n Comm'n MTD") [Dkt. No. 7]; the District's reply to Dr. Araya's opposition to its motion to dismiss ("District Reply") [Dkt. No. 8]; the Commission's reply to Dr. Araya's opposition to its motion to dismiss ("Comm'n Reply") [Dkt. No. 9]; Dr. Araya's motion to amend the complaint ("Mot. to Amend") [Dkt. No. 10] and the proposed amended complaint ("Proposed Am. Compl.") [Dkt. No. 10-1]; the District's opposition to Dr. Araya's motion to amend ("District Opp'n Mot. to Amend") [Dkt. No. 11]; the Commission's opposition to Dr. Araya's motion to amend ("Comm'n Opp'n Mot. to Amend") [Dkt. No. 13]; Dr. Araya's reply to the Commission's opposition to the motion to amend ("Araya Reply Comm'n Opp'n") [Dkt. No. 14]; and Dr. Araya's reply to the District's opposition to the motion to amend ("Araya Reply District Opp'n") [Dkt. No. 15].

Araya visitation with the children; awarded Dr. Araya's wife ownership and possession of

certain real properties; and ordered Dr. Araya to pay child support, as well as spousal support for

a limited period.  Id.  Dr. Araya appealed Judge Bayly's decision, which was affirmed by the

District of Columbia Court of Appeals.  Id. at 59.

        The present action is Dr. Araya's third lawsuit filed in this federal District Court

relating to his divorce case.  See Henok v. Dist. of Columbia, Civil Action No. 13-1621 (PLF),

2014 WL 3542121 (D.D.C. July 18, 2014) (dismissing Dr. Araya's Fifth Amendment takings

claims, premised on Judge Bayly's award of real properties to Araya's wife, for lack of subject

matter jurisdiction under Rooker-Feldman doctrine); Araya v. Bayly, 875 F. Supp. 2d 1 (D.D.C.

2012), aff'd, No. 12-7069, 2013 WL 500819 (D.C. Cir. Jan. 18, 2013) (per curiam), cert. denied,

134 S. Ct. 266 (2013) (dismissing under Rooker-Feldman numerous other claims arising from

the divorce proceedings).  In his complaint and proposed amended complaint in this case, Dr.

Araya sets forth a variety of allegations, including that:  (1) Judge Bayly improperly possessed

and used the "Catholic Bible" in the courtroom, see Proposed Am. Compl. ¶¶ 8, 19, 22, 33, 42,

44; (2) Judge Bayly forced Dr. Araya to swear an oath on the Bible, see id. ¶¶ 12, 17, 19, 22, 38,

44; (3) Judge Bayly forced Dr. Araya to pray in the courtroom, see id. ¶¶ 9, 16, 34, 37, 42; (4)

Judge Bayly was biased in favor of the Catholic faith, shared by himself and Dr. Araya's wife,

see id. ¶¶ 32, 44, 46; (5) Judge Bayly suffered from hearing loss, which interfered with his ability

to conduct a fair trial, see id. ¶¶ 10, 11, 29, 35, 36, 42; and (6) Judge Bayly frequently cancelled

scheduled court dates without notice, causing Dr. Araya to miss work and to incur substantial

financial losses.  See id. ¶ 30.[4]

---

[4]      The Court cites to Dr. Araya's proposed amended complaint rather than to his
original complaint for the reasons explained infra at 7-8.

Based on these various allegations, Dr. Araya asserts claims under 42 U.S.C. § 1983 and the D.C. Human Rights Act ("DCHRA"), as well as a claim for breach of fiduciary duty. The premise of these claims is that the defendants — the District of Columbia and the Commission — breached a duty to ensure that judges of the Superior Court act in a manner that affords litigants fair trials and that does not violate litigants' rights under the First Amendment or the DCHRA. Dr. Araya demands compensatory, punitive, special, statutory, exemplary, and treble damages, as well as an award of litigation costs. Proposed Am. Compl., Prayer for Relief ¶¶ 1-5, 7-8. In addition, Dr. Araya seeks an injunction restraining the defendants from "carrying, placing, [or] using ANY [B]ible or anything religious" in the D.C. Superior Court, as well as an order "to remove any and all religious paraphernalia" from the grounds of that court. Id. ¶ 6. Alternatively, Dr. Araya seeks injunctive relief that would permit him and other citizens to place their own preferred religious materials on the grounds of the Superior Court. Id. ¶ 11.

The District maintains that all of Dr. Araya's claims for retrospective relief — relating to the injuries that Araya says he suffered during the trial proceedings — are barred by applicable statutes of limitations. District MTD Mem. at 5-7. The District also argues that Araya's Section 1983 claim fails on its merits because he has not set forth factual allegations that plausibly demonstrate his asserted injuries were caused by a custom or policy of the District. Id. at 7-8. With respect to Dr. Araya's claim for an injunction requiring the removal of all religious materials from the D.C. Superior Court's grounds, the District responds that Araya lacks standing to assert such a claim. Id. at 9-10. The District adds an additional argument for dismissal in its opposition to Dr. Araya's motion to amend his complaint, contending that Araya's claims are barred by the doctrine of collateral estoppel based on the prior decision of the D.C. Court of Appeals affirming Judge Bayly's ruling. District Opp'n Mot. to Amend at 4-5.

4

The Commission joins in the District's untimeliness arguments, see Comm'n MTD Mem. at 2 nn.2-3, as well as in the District's standing argument.  See Comm'n Opp'n Mot. to Amend at 4. It further argues that Araya's Section 1983 claim against the Commission fails because the Commissioners' purported fiduciary duties do not arise by virtue of state law.  Comm'n MTD Mem. at 3.

## II.  LEGAL STANDARDS

### A.  Motion to Amend the Complaint

Under Rule 15 of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  FED. R. CIV. P. 15(a)(1).  In all other circumstances, the Court "will freely give leave [to amend a complaint] when justice so requires," FED. R. CIV. P. 15(a)(2), and "[i]t is common ground that Rule 15 embodies a generally favorable policy toward amendments."  Howard v. Gutierrez, 237 F.R.D. 310, 312 (D.D.C. 2006) (quoting Davis v. Liberty Mut. Ins. Co., 871 F.2d 1134, 1136-37 (D.C. Cir. 1989)).  Leave may be denied, however, due to "undue delay, bad faith, undue prejudice to the opposing party, repeated failure to cure deficiencies, or futility."  Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).  Where the proposed amendment would not survive a motion to dismiss or motion for judgment on the pleadings, leave may be denied on the grounds of futility.  See Willoughby v. Potomac Elec. Power Co., 100 F.3d 999, 1003 (D.C. Cir. 1996); Elliott v. Fed. Bureau of Prisons, 521 F. Supp. 2d 41, 49 (D.D.C. 2007); Black v. Nat'l Football League Players Ass'n, 87 F. Supp. 2d 1, 6 (D.D.C. 2000).

### B.  Motions to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  On such a motion, the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); see also Bell Atlantic Corp. v. Twombly, 550 U.S. at 555.  The complaint "is construed liberally in the [plaintiff's] favor, and [the Court should] grant [the plaintiff] the benefit of all inferences that can be derived from the facts alleged."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept the plaintiff's legal conclusions.  Hettinga v. United States, 677 F.3d at 476; Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. at 555).

In addition, in this case the Court is mindful that the plaintiff is proceeding *pro se*, and therefore his complaint is to be "held to a less stringent standard than complaints drafted by attorneys."  Dorsey v. American Express Co., 499 F. Supp. 2d 1, 3 (D.D.C. 2007) (citing Erickson v. Pardus, 551 U.S. at 94).

### III.  DISCUSSION

#### A.  Dr. Araya's Motion to Amend His Complaint

After the District and the Commission each had filed a motion to dismiss Dr.

Araya's complaint and those motions had been fully briefed, Dr. Araya filed a motion to amend,

accompanied by a proposed amended complaint.  Dr. Araya maintains that he is entitled to one

amendment of his complaint as a matter of course under Rule 15(a)(1) of the Federal Rules of

Civil Procedure.  Mot. to Amend at 1-2.  But as the District correctly points out, Dr. Araya filed

his motion to amend more than 21 days after the defendants had filed their motions to dismiss.

District Opp'n Mot. to Amend at 1-2 (defendants filed motions in July 2014 but Araya did not

file motion to amend until September).  Accordingly, he cannot invoke Rule 15(a)(1), which

provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days

after service of a motion under Rule 12(b)."  FED. R. CIV. P. 15(a)(1).[5]  Instead, Dr. Araya must

obtain leave of Court to amend his complaint, see FED. R. CIV. P. 15(a)(2), and the defendants

contend that granting such leave would be futile because Dr. Araya's proposed amended

complaint fails to cure the deficiencies in his original complaint.

Where a proposed amended complaint would not survive a motion to dismiss,

leave to amend may be denied on the grounds of futility.  See Willoughby v. Potomac Elec.

Power Co., 100 F.3d at 1003.  In this case, because the proposed amended complaint is virtually

identical to the original complaint — save for a few additions aimed at curing purported

deficiencies identified by the defendants in their motions to dismiss — if the proposed amended

---

[5]        Dr. Araya cites cases supporting the proposition that the filing of a motion to dismiss, which is not a "responsive pleading," does not affect a plaintiff's entitlement to amend his complaint once as a matter of course.  See Mot. to Amend at 1-2.  These decisions, however, were issued prior to the 2009 amendments to Rule 15, which added the provision stating that the right to amend as a matter of course expires 21 days after the filing of a motion under Rule 12(b).  See FED. R. CIV. P. 15 advisory committee's notes (2009 Amendments).

complaint fails for futility, then necessarily the original complaint must be dismissed. Specifically, only three substantive differences exist between the original complaint and the proposed amended complaint.  See District Opp'n Mot. to Amend at 2-3 (citing the addition of paragraphs 48 and 49, as well as the addition of a sentence to paragraph 18); Comm'n Opp'n Mot. to Amend at 2 & n.1 (same, and noting a fourth immaterial amendment).  These amendments seem clearly to be aimed at addressing points raised by the defendants in their motions to dismiss.  See Proposed Am. Compl. ¶¶ 18, 48, 49.  The Court therefore will consider whether Dr. Araya's proposed amended complaint would survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See In re Interbank Funding Corp. Sec. Litig., 629 F.3d 213, 215-16 (D.C. Cir. 2010) (legal standard for futility "is, for practical purposes, identical to [that for] a Rule 12(b)(6) dismissal based on the allegations in the amended complaint") (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 132 (1st Cir. 2006)). In performing its analysis, the Court will take into account the defendants' motions to dismiss the original complaint and the briefing on those motions, as supplemented by the arguments set forth in the defendants' respective memoranda filed in opposition to Dr. Araya's motion to amend. Cf. 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FED. PRAC. & PROC. CIV. § 1476, at 638 (3d ed. 2010) ("[D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending.  If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading.").

### B.  Effects of Prior Related Litigation

At the outset, the Court addresses whether any of the prior judicial decisions relating to Dr. Araya's divorce case have an impact on the present case.  After Judge Bayly had issued his ruling in August 2011, yet before Dr. Araya's appeal of that ruling had produced a decision from the D.C. Court of Appeals, now-Chief Judge Roberts dismissed an action brought in this District by Dr. Araya against Judge Bayly.  See Araya v. Bayly, 875 F. Supp. 2d 1.  In his decision, Chief Judge Roberts concluded that because all of Dr. Araya's claims would "require review and rejection of findings, decisions, and actions integral to the divorce proceedings," the Rooker-Feldman doctrine precluded assertion of jurisdiction by a federal court over the matter. Id. at 5-6.  Under Rooker-Feldman, federal courts lack jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Dr. Araya's claims in his case before Chief Judge Roberts were based on some of the same allegations that he now asserts in this Court.  Specifically, Dr. Araya alleged in the earlier action that Judge Bayly bore a religious bias against him, and that Judge Bayly's purported inability to hear prevented him from affording Dr. Araya a fair trial.  See Araya v. Bayly, 875 F. Supp. 2d at 2-3, 5-6.  Dr. Araya makes the same assertions in his proposed amended complaint in this case.  See Proposed Am. Compl. ¶¶ 32, 44, 46 (religious bias); id. ¶¶ 10, 11, 29, 35, 36, 42 (inability to hear).  Chief Judge Roberts' previous jurisdictional ruling bars Dr. Araya's relitigation of claims based on these alleged facts, as, under the preclusive effect of that ruling, this Court likewise lacks jurisdiction to entertain such claims.  See Casey v. Dep't of State, 980 F.2d 1472, 1475 n.3 (D.C. Cir. 1992) ("[A]lthough a dismissal for lack of

jurisdiction does not have the same broad preclusive effect as a dismissal on the merits, it will

'preclude relitigation of the precise issue of jurisdiction that led to the initial dismissal.'")

(quoting GAF Corp. v. United States, 818 F.2d 901, 912 (D.C. Cir. 1987)); see also In re

Watson, 910 F. Supp. 2d 142, 146-47 (D.D.C. 2012).  Moreover, the Court notes that subsequent

to Chief Judge Roberts' dismissal of Araya's suit, the D.C. Court of Appeals — reviewing the

merits of Judge Bayly's ruling in the divorce case — addressed these same allegations and

concluded that Dr. Araya's complaints regarding religious bias and Judge Bayly's inability to

hear were meritless.  See Araya v. Keleta, 65 A.3d at 44 n.3 (religious bias), 46 n.9 (inability to

hear).

       The District goes one step further and argues that the D.C. Court of Appeals'

rejection of Araya's complaint regarding religious bias precludes all of the claims Araya now

asserts.  See District Opp'n Mot. to Amend at 4-5 (citing Araya v. Keleta, 65 A.3d at 44 n.3).

But the Court of Appeals did not address some of the issues that Dr. Araya now has placed

before this Court, namely whether he was injured by the presence of a Bible in the courtroom

and by Judge Bayly's allegedly having forced Dr. Araya to swear an oath upon it.[6]  Nor could

Dr. Araya have been expected to advance these claims — which are collateral to his complaints

about the propriety of Judge Bayly's ruling — in his appeal of that ruling.  Likewise, Dr. Araya

---

[6]    Dr. Araya also alleges that Judge Bayly forced him to pray during the trial
proceedings.  See Proposed Am. Compl. ¶¶ 9, 16, 34, 37, 42.  The Court suspects that these
allegations actually relate to a line of questioning by Dr. Araya's wife's attorney during the
cross-examination of Dr. Araya, which Araya raised in his amended complaint in the action
before Chief Judge Roberts.  See Amended Complaint at 2, 6-7, Araya v. Bayly, Civil Action
No. 11-2050 [Dkt. No. 8.].  Nevertheless, as Araya appears not to have advanced in his earlier
lawsuits the specific contention that Judge Bayly forced him to pray, and because upon a motion
to dismiss the Court assumes the truth of this assertion, he is not precluded from basing his
claims upon this additional allegation.

would not have been able in that appeal to pursue the injunctive relief that he now seeks.[7]

Accordingly, the Court will proceed to consider Dr. Araya's claims based on his allegations

regarding the presence and use of the Bible in the courtroom, as well as his additional allegation

regarding forced prayer.

### C. Section 1983 Claim for Retrospective Relief

The statute of limitations in a Section 1983 case "is that which the State provides

for personal-injury torts." Wallace v. Kato, 549 U.S. 384, 387 (2007). Because District of

Columbia law "provides multiple statutes of limitations for personal injury actions, courts

considering [Section] 1983 claims should borrow the general or residual statute for personal

injury actions." Earle v. Dist. of Columbia, 707 F.3d 299, 305 (D.C. Cir. 2012) (quoting Owens

v. Okure, 488 U.S. 235, 249-50 (1989)). In the District of Columbia, the general statute of

limitations for personal injury torts is three years. Id. (citing D.C. CODE § 12-301(8)).

On the other hand, "the accrual date of a [Section] 1983 action is a question of

federal law that is *not* resolved by reference to state law." Earle v. Dist. of Columbia, 707 F.3d

at 305 (quoting Wallace v. Kato, 549 U.S. at 388). "A [S]ection 1983 claim accrues when the

---

[7]       Nor are these claims precluded by Dr. Araya's two previous actions brought in
this Court. Neither action resulted in a judgment on the merits, as in each case Araya's
complaint was dismissed for lack of subject matter jurisdiction. See FED. R. CIV. P. 41(b).
Moreover, as Araya did not previously advance claims based on these particular allegations, see
Henok v. Dist. of Columbia, 2014 WL 3542121, at *2; Araya v. Bayly, 875 F. Supp. 2d at 2,
these jurisdictional rulings do not bear any preclusive effect with respect to the question of this
Court's subject matter jurisdiction. And the Court concludes that it does have jurisdiction to
adjudicate such claims, as Dr. Araya's alleged injuries are independent of any harm he claims to
have suffered as a result of Judge Bayly's ruling. See Exxon Mobil Corp. v. Saudi Basic Indus.
Corp., 544 U.S. at 291-92 (Rooker-Feldman only applies in the "limited circumstances" where
"the losing party in state court file[s] suit in federal court after the state proceedings [have]
ended, complaining of an injury caused by the state-court judgment and seeking review and
rejection of that judgment"); see also Lance v. Dennis, 546 U.S. 459, 464 (2006) (per curiam)
(cautioning that Rooker-Feldman is a "narrow doctrine").

plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." Id. (quoting Wallace v. Kato, 549 U.S. at 388) (internal quotation marks omitted).

"[B]ecause statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." Bregman v. Perles, 747 F.3d 873, 875 (D.C. Cir. 2014) (quoting de Csepel v. Republic of Hungary, 714 F.3d 591, 603 (D.C. Cir. 2013)) (alteration in original).  Dr. Araya's trial before Judge Bayly ended on January 6, 2011, see Araya v. Keleta, 65 A.3d at 43-44, and he initiated the present action on June 30, 2014, more than three years after the trial's conclusion.  Dr. Araya maintains, however, that the accrual date for his Section 1983 claim is August 24, 2011, the date on which Judge Bayly issued his ruling.  See Proposed Am. Compl. ¶ 18 ("This order completed all the elements of the injury."); Araya Opp'n District MTD at 3 ("The trial, the injury and all its elements were complete [on] August 24th, 2011.  Therefore, this suit is timely."); Araya Reply District Opp'n at 4-5.  But Dr. Araya is mistaken; the injuries that he asserts on the basis of purported First Amendment violations due to Judge Bayly's use of the Bible during the trial are distinct from any injuries he claims to have suffered as a result of Judge Bayly's ruling.  Indeed, were Dr. Araya's Section 1983 claim so bound up with the judgment of the Superior Court, the Rooker-Feldman doctrine would preclude this Court's assertion of jurisdiction over the claim.

In Dr. Araya's reply to the District's opposition to his motion to amend, he adds the allegation that there was "court interaction" that occurred as late as July 2011.  See Araya Reply District Opp'n at 5.  This vague contention, however, cannot carry his claim over the threshold into the limitations period.  Moreover, the docket sheet in Dr. Araya's domestic relations case shows that he has not appeared before Judge Bayly since April 18, 2011.  See

District Opp'n Mot. to Amend Ex. 1 [Dkt. No. 12-1].[8]  Thus, Dr. Araya's Section 1983 claim

accrued on January 6, 2011 — or at the very latest, by April 18, 2011, the date of his last in-court

appearance before Judge Bayly — and his June 2014 complaint therefore was untimely.  The

Court will dismiss Dr. Araya's Section 1983 claim for retrospective relief as barred by the statute

of limitations.

### D.  D.C. Human Rights Act

Dr. Araya contends that his rights under the D.C. Human Rights Act were

violated by Judge Bayly's conduct, and that the District and the Commission are liable to him for

their failure to ensure that Judge Bayly not violate these rights.  See Araya Opp'n District MTD

at 2-3; Araya Opp'n Comm'n MTD at 1-3.[9]  It is clear, however, that Dr. Araya's complaint was

filed well outside of the one-year limitations period provided by the DCHRA.  See D.C. CODE

---

[8]        In support of its opposition to Dr. Araya's motion to amend, the District has
submitted a copy of the Superior Court's docket sheet in Dr. Araya's domestic relations case.
Dr. Araya does not dispute the authenticity of this docket sheet.  In evaluating a motion to
dismiss under Rule 12(b)(6), "[t]he court may . . . consider documents in the public record of
which the court may take judicial notice, as well as the existence of other litigation . . . ."  Tefera
v. OneWest Bank, FSB, 19 F. Supp. 3d 215, 220 (D.D.C. 2014) (citations omitted); see also
Abhe & Svoboda, Inc. v. Chao, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (same); Rogers v. Dist. of
Columbia, 880 F. Supp. 2d 163, 166 (D.D.C. 2012) ("[T]his Court may take judicial notice of
public records . . . and a D.C. Superior Court docket sheet certainly satisfies that standard.").

[9]        The Court's dismissal of Dr. Araya's federal claims under Section 1983, see supra
at 11-13 and infra at 15-17, raises the question whether it should exercise supplemental
jurisdiction over Araya's claims brought under District of Columbia law.  See 28 U.S.C.
§ 1367(c)(3); see also Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district
court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal
claims are dismissed.").  The Court will use its discretion to exercise supplemental jurisdiction
over these claims because, as explained further in this Opinion, Araya's claims under the
DCHRA and his claim for breach of fiduciary duty both clearly fail for two threshold reasons:
untimeliness, and Araya's failure to provide notice of his alleged injuries to the Mayor.  See
Shekoyan v. Sibley Int'l, 409 F.3d at 424 (factors to be considered with respect to the exercise of
supplemental jurisdiction are "judicial economy, convenience, fairness, and comity [to state
courts]") (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  It would be

§ 2-1403.16(a).  His purported DCHRA claim arises from a trial that concluded on January 6,

2011, see Araya v. Keleta, 65 A.3d at 43-44, and Dr. Araya initiated the present action on June

30, 2014, more than three years later.  He contends that the statute of limitations should be tolled

by his efforts to pursue these grievances before the Commission on Judicial Disabilities and

Tenure.  See Araya Opp'n District MTD at 3; Araya Opp'n Comm'n MTD at 1, 3.  But the

DCHRA provides just two means of tolling its limitations period:  the timely filing of a

complaint with the District of Columbia Office of Human Rights, or the filing of such a

complaint under other administrative procedures established by the Mayor.  See D.C. CODE

§ 2-1403.16(a).  There is no tolling provision for complaints made to the Commission on Judicial

Disabilities and Tenure.  Nor has Dr. Araya alleged any facts indicating that the defendants have

"done anything that would tend to lull the plaintiff into inaction, and thereby permit the

limitation prescribed by the statute to run."  Daniels v. Potomac Elec. Power Co., 100 A.3d 139,

142 (D.C. 2014) (quoting East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 156-57

(D.C. 1998)) (internal quotation marks omitted).  Accordingly, the Court will dismiss Dr.

Araya's DCHRA claim as time-barred.[10]

---

a waste of judicial resources and the time and resources of the parties to decline to exercise
supplemental jurisdiction only to have a judge of the Superior Court — presumably after some
delay and further briefing — reach these same self-evident conclusions.

[10]        Even if it had been timely filed, Dr. Araya's DCHRA claim would be dismissed
for another reason:  his failure to indicate compliance with the requirement that persons bringing
claims against the District for unliquidated damages must, "within six months after the injury or
damage was sustained . . . give[] notice in writing to the Mayor of the District of Columbia of
the approximate time, place, cause, and circumstances of the injury or damage."  D.C. CODE
§ 12-309; see also Owens v. Dist. of Columbia, 993 A.2d 1085, 1087-90 (D.C. 2010) (six-month
notice requirement under Section 12-309 applies to claims brought under the DCHRA).  Dr.
Araya states that he provided notice to the "District of Columbia government" in November
2011.  Araya Opp'n District MTD at 3.  Because the Court has concluded that Araya's claims
accrued at the very latest in April 2011, Araya has by his own admission failed to provide notice
within six months of his alleged injuries.  Unlike Dr. Araya's claims brought under District of

### E.  Breach of Fiduciary Duty

Neither of the defendants directly responds to Dr. Araya's assertion of a claim for breach of fiduciary duty.  Indeed, it is not clear whether this claim differs at all from his statutory claims under the DCHRA and Section 1983, both of which are based on the premise that the District and the Commission failed to control Judge Bayly's conduct, thus allowing him to violate Dr. Araya's constitutional and statutory rights.  Assuming that Dr. Araya does advance an independent claim for common law breach of fiduciary duty, such a claim would nonetheless fail for the same reason that Dr. Araya's other claims founder:  his asserted injuries occurred outside of the applicable limitations period, which for this claim is three years.  See D.C. CODE § 12-301(8).  In addition, Araya's failure to provide notice to the Mayor as required under D.C. CODE § 12-309 provides another reason why this claim must be dismissed.  See supra at 14 n.10.[11]

### F.  Standing to Pursue Injunctive Relief Under Section 1983

Dr. Araya seeks an injunction restraining the defendants from "carrying, placing, [or] using ANY [B]ible or anything religious" in the D.C. Superior Court, as well as an order "to remove any and all religious paraphernalia" from the grounds of that court.  Proposed Am. Compl., Prayer for Relief ¶ 6.  Alternatively, Dr. Araya seeks injunctive relief that would permit him and other citizens to place their own preferred religious materials on the grounds of the

---

Columbia law, however, the six-month notice requirement under D.C. CODE § 12-309 does not apply to federal claims such as those brought under Section 1983.  Daskalea v. Dist. of Columbia, 227 F.3d 433, 445-46 (D.C. Cir. 2000).

[11]     Finally, the Court acknowledges Dr. Araya's additional allegation that Judge Bayly frequently cancelled scheduled court dates without notice, causing Dr. Araya to miss work and to incur substantial financial losses.  See Proposed Am. Compl. ¶ 30.  But Dr. Araya has identified no legal basis for any claim for damages based on this asserted fact, and none is apparent to the Court.

Superior Court.  Id. ¶ 11.  The defendants maintain that Araya lacks standing to assert these

claims.  District MTD at 9-10; District Opp'n Mot. to Amend at 7-8; Comm'n Opp'n Mot. to

Amend at 4.  The Court agrees with the defendants.

         To establish his standing to seek prospective relief, Dr. Araya must allege "a real

or immediate threat that [he] will be wronged again."  Henok v. District of Columbia, 2014 WL

3542121, at *4 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)); see also NB ex

rel. Peacock v. Dist. of Columbia, 682 F.3d 77, 82 (D.C. Cir. 2012) ("The question . . . is

whether the complaint contains facts that, viewed in the light most favorable to plaintiffs,

establish an imminent threat of injury.").  The threat of injury may not be "conjectural" or

"hypothetical."  City of Los Angeles v. Lyons, 461 U.S. at 102.  Dr. Araya asserts that he is a

party to an ongoing domestic relations case in the D.C. Superior Court, which "will remain open

for the next 17 years until [his] youngest child reaches age 21."  Proposed Am. Compl. ¶ 49.[12]

This allegation, however, is insufficient to establish that Dr. Araya faces a "real or immediate

threat" that he will again be subjected to an undesired encounter with the Bible in the Superior

Court.  See City of Los Angeles v. Lyons, 461 U.S. at 102.

         First, Dr. Araya's complaints about the presence and use of the Bible in the

Superior Court arise solely from his past interactions with Judge Bayly, and Judge Bayly is no

longer assigned to Dr. Araya's case.  District Opp'n Mot. to Amend at 8.  Although Dr. Araya

argues that Judge Bayly is still an active judge, see Proposed Am. Compl. ¶ 49, who would likely

---

[12]     Dr. Araya also argues that "[a]s a citizen, [he] ha[s] the right to ask this court to order the [D]istrict of Columbia government to remove ALL [B]ibles or religious paraphernalia in the District's courts and its grounds."  Araya Opp'n District MTD at 1.  Dr. Araya is incorrect: "the [Supreme] Court has consistently rejected claims of standing predicated solely on 'the right, possessed by every citizen, to require that the Government be administered according to law.'" Dellums v. U.S. Nuclear Regulatory Comm'n, 863 F.2d 968, 973 (D.C. Cir. 1988) (quoting Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 483 (1982)) (internal quotation marks omitted).

hear an emergency motion in Dr. Araya's case because he is familiar with the matter, <u>see</u> Araya

Reply District Opp'n at 5-6, it is wholly speculative whether Dr. Araya will ever appear before

Judge Bayly again.[13]   And "speculation is insufficient to establish the existence of a present, live

controversy." <u>City of Los Angeles v. Lyons</u>, 461 U.S. at 105 (quoting <u>Ashcroft v. Mattis</u>, 431

U.S. 171, 172 n.2 (1977) (per curiam)).  Although Dr. Araya alleges that there are "other jurist[s]

like [Judge Bayly] in the court," Proposed Am. Compl. ¶ 49, this vague contention likewise

raises no more than a speculative possibility that Araya might again encounter the Bible in the

Superior Court.  And notably, Araya has not accused Judge Anthony Epstein, who is currently

assigned to his case, of using the Bible in his courtroom.  <u>See</u> District Opp'n Mot. to Amend at 8.

In sum, Dr. Araya has alleged no facts indicating a "real or immediate threat" that he will suffer

a violation of his First Amendment rights, and he therefore lacks standing to seek an injunction

requiring the removal of all religious materials from the grounds of the Superior Court of the

District of Columbia.


## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the motions to dismiss Dr. Araya's

complaint filed by the District and the Commission; deny Dr. Araya's motion to amend his

complaint; and dismiss this case with prejudice.  The Court concludes that dismissal with

prejudice is appropriate because it is apparent that Dr. Araya cannot allege "other facts consistent

with [the proposed amended complaint]" that could "cure the deficienc[ies]" in that pleading.

<u>Rollins v. Wackenhut Servs., Inc.</u>, 703 F.3d 122, 131 (D.C. Cir. 2012) (quoting <u>Firestone v.</u>

<u>Firestone</u>, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per curiam)).  As explained, Dr. Araya cannot

---

[13]     In fact, Judge Bayly is a senior judge of the Superior Court and therefore sits infrequently.  <u>See</u> DIST. OF COLUMBIA SUPERIOR COURT JUDGES, http://www.dccourts.gov/internet/superior/judges/main.jsf (last visited Jan. 27, 2014).

plead facts that would demonstrate an accrual date that lies within the three-year limitations period, and he cannot demonstrate that he has standing to seek injunctive relief because he can do no more than speculate regarding future interactions with judges of the Superior Court.  An appropriate Order accompanies this Opinion.

        SO ORDERED.


/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  January 29, 2015